**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

MARLENE LOFTON,

Plaintiff,

v.

JOSHUA BLAKE, In His Individual Capacity; and MARK CROWE, In His Individual Capacity

Defendants.

CIVIL ACTION NO.: 4:25-cv-192

**O R D E R**

Plaintiff Marlene Lofton brought this case under 42 U.S.C. § 1983, alleging a violation of her First and Fourth Amendment rights. (Doc. 13.) Defendants are Mark Crowe ("Sheriff Crowe"), the Sheriff of Bryan County, Georgia, and Joshua Blake, a police officer employed by the Bryan County Sheriff's Office during the events relevant to this action. (Id. at pp. 1–2.) Both defendants are being sued in their individual capacities only. (Id.) Before the Court is Defendants' Motion to Dismiss, which argues that Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted. (Doc. 14.) Plaintiff has filed a Response to Defendants' Motion, (doc. 19), and Defendants have filed a Reply, (doc. 20). For the reasons below, the Court **GRANTS** Defendants' Motion. (Doc. 14.)

**BACKGROUND**

The Court derives the below facts from Plaintiff's Amended Complaint, (doc. 13), including the copy of Defendant Blake's report (the "Incident Report") attached to the Amended Complaint. Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1205–06 (11th Cir. 2007) (exhibits

attached to the complaint may be considered on a Federal Rule of Civil Procedure 12(b)(6) motion and are considered a part of the complaint). When exhibits attached to a complaint contradict general or conclusory allegations contained in the complaint, "the exhibits govern." Llauro v. Tony, 470 F. Supp. 3d 1300, 1314 (S.D. Fla. 2020) (quoting Gill ex rel. K.C.R. v. Judd, 941 F.3d 504, 514 (11th Cir. 2019)). It is only when "a complaint contains specific, well-pleaded allegations that either do not appear in the attached exhibit or that contradict conclusory statements in the exhibit" that the complaint allegations will govern. Id. Blake's bodycam footage of the incident, (doc. 6), is also incorporated by reference into the Amended Complaint as it clearly depicts the events that are central to Plaintiff's claims and its authenticity has not been challenged by Plaintiff.[1] Johnson v. City of Atlanta, 107 F.4th 1292, 1300–01 (11th Cir. 2024) (bodycam footage not attached to the complaint may be considered in ruling on a motion for judgment on the pleadings when it depicts events central to plaintiff's claims and its authenticity is undisputed). "Where the [bodycam] video is clear and obviously contradicts [Plaintiff's] alleged facts, [the Court] accept[s] the video's depiction instead of the complaint's account, and [the Court] view[s] the facts in the light depicted by the video." Id. (quoting Baker v. City of Madison, 67 F.4th 1268, 1277–78 (11th Cir. 2023)) (alterations adopted).

This case emerges from a traffic stop in Bryan County, Georgia. Plaintiff was driving to a doctor's appointment when she was stopped by Blake. (Doc. 13, p. 3.) Blake reports that he observed Plaintiff's vehicle speeding and passing several vehicles in a no passing zone. (Id. at p. 17.) Blake checked Plaintiff's speed using his radar, which registered Plaintiff's vehicle as going

[1] A flash drive containing Blake's bodycam footage has been provided to the Court and is stored in the Clerk of Court's office. Defendants submitted the flash drive following their filing of a previous motion to dismiss, (see docs. 5 & 6), and they expressly relied on the footage in their pending Motion to Dismiss, (see doc. 14, pp. 2–3, 7). Plaintiff apparently does not dispute the reliability of the bodycam footage and has not objected to the Court's receipt of the flash drive into evidence.

80 miles per hour in a 55 mile-per-hour zone. (Id.) Blake then initiated a traffic stop of Plaintiff's vehicle. (Id.) Plaintiff, who was 71 years old at the time of the incident, provided Blake with her driver's license, registration, and proof of insurance. (Id.) Plaintiff stated that she knew she was speeding and explained that she was late for her doctor's appointment. (Id.) Plaintiff then stated, "I just did it, I mean there was no excuse." (Id.)

Blake reports that, while standing outside of Plaintiff's vehicle, he "began randomly smelling the odor of marijuana." (Id.) However, Blake notes that he was "uncertain if it was environmental or coming from [Plaintiff] or her vehicle at the time." (Id.) Blake observed that Plaintiff was holding a vape pen in her hand and asked Plaintiff about it. (Id.) Plaintiff handed the vape to Blake, who verified that it was a "normal" (i.e., nicotine) vape. (Id.) Blake asked Plaintiff whether she had any marijuana inside the vehicle. (Id.) Plaintiff stated that she did not, laughing and making jokes about the situation. (Id.) Blake proceeded to explain why he stopped Plaintiff, but while he was doing so, Plaintiff attempted to change the topic. (Id.) Blake reports that Plaintiff "was being very talkative and had an inability to stay focused on the task/topic at hand." (Id.)

As he continued to "randomly" smell the odor of marijuana, Blake asked Plaintiff to stick out her tongue and remove her sunglasses, which she complied with but allegedly "scoffed while doing so." (Id.) Blake observed that Plaintiff's eyes were "watery and bloodshot," which Plaintiff attributed to her prescription medications. (Id.) Plaintiff then showed Blake a list of her prescriptions. (Id.) As Blake questioned Plaintiff about her prescriptions, Plaintiff's mood began to change and she became increasingly annoyed. (Id.) Plaintiff admitted that she was speeding but insisted that she did not take any drugs besides her prescription medications. (Id.)

To better observe her behavior and verify that the marijuana odor was not coming from inside the vehicle, Blake instructed Plaintiff to step out of the vehicle, at which point she became agitated and stated, "oh no, come on," and "now you are getting irritating." (Id. at pp. 5, 18.) After Plaintiff stepped out of the vehicle, Blake confirmed that the marijuana odor was not emanating from the vehicle and that Plaintiff did not have marijuana in the vehicle. (Id.)

Blake proceeded to conduct several field sobriety tests. (Id. at p. 18.) Blake first conducted a Horizontal Gaze Nystagmus (HGN) Test. (Id.) Prior to the test, Plaintiff indicated that she did not have any medical problems that would prevent her from performing the test. (Id.) However, Plaintiff also reported getting dizzy during the test and stated that her medications made balance an issue for her. (Id. at p. 19.) After conducting the HGN Test, Blake concluded that Plaintiff displayed six out of six possible clues for intoxication. (Id.) Blake administered a Lack of Convergence Test, concluding that there was a lack of convergence in both of Plaintiff's eyes. (Id. at pp. 19–20.) Plaintiff was unable to perform either the Walk and Turn Test or the One Leg Stand Test. (Id. at p. 19.) Plaintiff performed a Finger to Nose Test and Blake observed her swaying and experiencing eyelid tremors during the test. (Id. at p. 20.) Plaintiff missed her nose the first and sixth time. (Id.) Finally, Plaintiff performed a Modified Romberg Test, being instructed to close her eyes, stand with her feet together, and keep her arms at her sides while tilting her head back slightly for roughly thirty seconds. (Id.) Plaintiff completed the Modified Romberg Test, but was again observed by Blake to be "swaying side to side" and experiencing eyelid tremors. (Id. at p. 21.)

EMS then arrived at the scene and Blake informed them of Plaintiff's various medical conditions. (Id.) EMS checked Plaintiff's vitals, which were "good." (Id.) Blake informed Plaintiff that she was "showing signs of impairment" such that she was, in his opinion, unable to

operate her vehicle safely. (Id.) Blake then informed Plaintiff that she was under arrest. (Id.) This greatly upset Plaintiff, who began to cry and plead with Blake. (Id.) After placing Plaintiff in the back of his patrol vehicle, Blake read Plaintiff an implied consent notice and requested her consent to a state-administered chemical test of her blood. (Id.) Plaintiff refused to consent to the blood test. (Id.) Blake charged Plaintiff with speeding, passing in a no-passing zone, and driving under the influence of drugs (DUI – less safe). (Id. at pp. 8–9, 16.) Plaintiff was incarcerated at the Bryan County Detention Center, being subjected to cruel conditions. (Id. at p. 10.) All criminal charges against Plaintiff were dropped several months later because the prosecutor determined that Blake could not be used as a witness. (Id. at p. 11.)

During the events in question, Blake allegedly observed two bumper stickers on the back of Plaintiff's vehicle. (Id. at p. 6.) The first bumper sticker states "We Elect People to Serve Us. Not Rule Us. Tell Them to do Their Job." (Id.) The second bumper sticker states "Science flies us to the moon, Religion flies us into buildings." (Id.) Plaintiff alleges that Blake was "personally offended by Plaintiff's bumper stickers," (id. at p. 7), though Blake does not mention the bumper stickers in his Incident Report and the bodycam footage fails to show any discussion regarding the stickers, (see id. at pp. 16–21; see generally doc. 6).

Plaintiff brings suit under 42 U.S.C. § 1983, suing both Blake and Sheriff Crowe in their individual capacities. (See generally doc. 13.) Before the Court is Defendants' Motion to Dismiss, which argues that Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted. (See doc. 14.) Plaintiff has filed a Response to Defendants' Motion, (doc. 19), and Defendants have filed a Reply, (doc. 20).

**STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678. Rather, "[a] complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215 (11th Cir. 2012) (quoting Ashcroft, 556 U.S. at 678).

The plausibility standard is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Ashcroft, 556 U.S. at 678 (internal quotation marks and citation omitted). Dismissal under Rule 12(b)(6) is also permitted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993); see also Neitzke v. Williams, 490 U.S. 319, 326–27 (1989) (explaining that Rule 12 allows a court "to dismiss a claim on the basis of a dispositive issue of law").

## DISCUSSION

### I. Plaintiff's Claims Against Officer Blake (Count I)

#### A. Probable Cause and Qualified Immunity

Plaintiff claims that Blake violated her rights under the First and Fourth Amendments. (Doc. 13, pp. 12–13.) According to Plaintiff, "an objectively reasonable law enforcement officer in Deputy Blake's position would have known that detaining, arresting, charging, and prosecuting Plaintiff would be a violation" of Plaintiff's constitutional rights. (Id.) Plaintiff claims that Blake "unreasonably extended the duration and scope of the traffic stop" under the false pretext of smelling marijuana, illegally searched Plaintiff's vehicle despite lacking probable cause, and wrongfully arrested Plaintiff in retaliation for her protected speech. (Id. at pp. 4–6, 9; doc. 19, p. 1.) As best the Court can tell, Plaintiff's claims against Blake consist of wrongful arrest and unlawful search and seizure in violation of the Fourth Amendment and retaliation against Plaintiff's protected speech in violation of the First Amendment.

Defendants respond that Plaintiff's claims against Blake fail because Blake had probable cause for the arrest and also that Plaintiff's claims are barred by qualified immunity. (See generally doc. 14.) "Claims for false arrest and false imprisonment under § 1983 fail as a matter of law if there was probable cause for the arrest." Quire v. Miramar Police Dep't, 595 F. App'x 883, 886 (11th Cir. 2014) (internal citation omitted). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001). As Plaintiff's First Amendment retaliation claim is predicated upon her wrongful arrest claim, it too will fail if Blake had probable cause for the arrest. Majeroni v. Chatham Cnty. Bd. of Elections, 765 F. Supp. 3d 1355 (S.D. Ga. 2025) ("For purposes of false imprisonment and

false arrest claims, both of which Plaintiff has alleged here, 'the presence of probable cause should generally defeat a First Amendment retaliatory arrest claim.'" (quoting Nieves v. Bartlett, 587 U.S. 391, 405 (2019))); see also DeMartini v. Town of Gulf Stream, 942 F.3d 1277, 1297 (11th Cir. 2019) ("[T]he presence of probable cause will . . . generally defeat a § 1983 First Amendment retaliation claim for an underlying retaliatory arrest . . . .").

"Probable cause is established where facts, 'derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed.'" Streeter v. Dep't of Pub. Safety, 689 F. Supp. 3d 1312, 1324 (S.D. Ga. 2023) (quoting Garcia v. Casey, 75 F.4th 1176, 1186 (11th Cir. 2023)). All that is required is a "probability or substantial chance of criminal activity, not an actual showing of such activity." Id. (quoting Gates v. Khokhar, 884 F.3d 1290, 1298 (11th Cir. 2018)). Probable cause "is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." Kaley v. United States, 571 U.S. 320, 338 (2014) (alterations adopted) (internal quotations omitted). Importantly, "innocent behavior frequently will provide the basis for a showing of probable cause," because "the Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect released." Streeter, 689 F. Supp. 3d at 1325 (alteration adopted) (internal quotations omitted). However, officers must consider any exculpatory information available to them—including any disclosed disabilities which may affect the determination of whether probable cause exists. Id. at 1327 (citing Kingsland v. City of Miami, 382 F.3d 1220, 1228 (11th Cir. 2004), abrogated on other grounds by Williams v. Aguirre, 965 F.3d 1147 (11th Cir. 2020)).

Defendants also contend that Plaintiff's claims are barred by qualified immunity. (Doc. 14, pp. 11–13.) "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). The doctrine "is intended to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Hoyt v. Cooks, 672 F.3d 972, 977 (11th Cir. 2012) (quotations omitted). As a result, qualified immunity "liberates government agents from the need to constantly err on the side of caution by protecting them both from liability and the other burdens of litigation, including discovery." Holmes v. Kucynda, 321 F.3d 1069, 1077 (11th Cir. 2003) (internal quotation marks omitted). But qualified immunity does not protect an official who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff." Id. (alterations adopted) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982)); see also Majeroni, 765 F. Supp. 3d at 1367 (government officials acting within scope of discretionary authority are shielded from liability by qualified immunity "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.") (internal quotations omitted).

In the Fourth Amendment context, an officer will be entitled to qualified immunity so long as the arrest was supported by "arguable probable cause." Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997) ("In order to be entitled to qualified immunity from a Fourth Amendment claim, an officer need not have actual probable cause but only 'arguable probable cause . . . .'"). This is

the case even when no probable cause existed. Majeroni, 765 F. Supp. 3d at 1369. "An officer has *arguable* probable cause if 'a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests.'" Id. (quoting Garcia, 75 F.4th at 1186). In other words, an officer has arguable probable cause "where a reasonable officer 'could have believed that probable cause existed.'" Houston v. Tucker, 137 F. Supp. 2d 1326, 1336 (N.D. Ga. 2000) (quoting Moore v. Gwinnett Cnty., 967 F.2d 1495, 1497 (11th Cir. 1992)); see also McKenzie v. Thompson, 240 F. Supp. 3d 1304, 1311 (N.D. Ga. 2017) ("If reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity." (quoting Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003))).

"An officer asserting a qualified immunity defense bears the initial burden of showing that he was acting within his discretionary authority." Streeter, 689 F. Supp. 3d at1324 (internal citations and quotations omitted). Because it is undisputed that Blake was acting within his discretionary authority, the burden thus shifts to Plaintiff to show that "(1) the officer violated a constitutional right, and (2) the right was clearly established at the time of the alleged violation." Id. (internal quotation omitted) (alterations adopted). As Plaintiff alleges that Blake violated her First and Fourth Amendment rights by wrongfully arresting her in retaliation for her protected speech, the Court must consider whether Plaintiff carried her burden of alleging facts sufficient to show that Blake had neither probable cause nor arguable probable cause for the arrest. Id. at 1326.

"Whether an officer has probable cause or arguable probable cause, or neither, 'depends on the elements of the alleged crime and the operative fact pattern.'" Id. (quoting Khokhar, 884 F.3d at 1298). Here, Plaintiff was arrested for violating O.C.G.A. § 40-6-181 (speeding in excess of the maximum limits), O.C.G.A. § 40-6-46 (passing in a no-passing zone), and O.C.G.A. § 40-

6-391(a)(2) (DUI, less safe). (Doc. 13, p. 16.) Violation of any of these statutes is a misdemeanor. O.C.G.A. § 40-6-1(a). Defendants argue that "[e]ach of these offenses amounted to an independently sufficient basis for [Plaintiff's] arrest." (Doc. 14, p. 8.) Where an arrestee faces multiple charges, the existence of probable cause (or arguable probable cause) as to any one charge will defeat a Fourth Amendment claim for wrongful arrest. See Paez v. Mulvey, 915 F.3d 1276, 1285 (11th Cir. 2019) (citing Holmes, 321 F.3d at 1083); see also Skop v. City of Atlanta, 485 F.3d 1130, 1138 (11th Cir. 2007) (defendant officer who arrested plaintiff for "two possible crimes" would be entitled to qualified immunity if he possessed probable cause or arguable probable cause to arrest plaintiff for either). Indeed, "[t]he validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., 956 F.2d 1112, 1119 n.4 (11th Cir. 1992).

While Plaintiff urges in her Response that whether she committed the speeding and passing offenses remains an unresolved factual question, (doc. 19, pp. 4–5), her culpability is irrelevant as to whether Blake had at least arguable probable cause to arrest her for those offenses. See Khokhar, 884 F.3d at 1298 (innocent behavior "frequently will provide the basis for a showing of probable cause") (internal quotation omitted). Moreover, Blake's bodycam footage shows Plaintiff accepting responsibility for speeding and illegal passing. (See doc. 6 at 0:30–0:37, 1:30–1:42.) Plaintiff stresses the supposed "dearth of objective, direct evidence that [she] illegally passed . . . solid lines while driving 25 mph over the speed limit," (doc. 19, p. 4), but there is nothing in the pleadings or incorporated materials indicating that Blake lacked at least arguable probable cause to arrest Plaintiff for these offenses, particularly when she admitted, at the very least, to the speeding offense. Indeed, the Amended Complaint focuses exclusively on the charges under O.C.G.A. § 40-6-391(a)(2) and whether Blake lacked probable cause to arrest Plaintiff for

driving under the influence of marijuana. (See doc. 13, pp. 3–10.) It does not argue that Blake lacked probable cause for the other two charges. (See id.) Blake thus had at least arguable probable cause to arrest Plaintiff for both the speeding charge under O.C.G.A. § 40-6-181 and the illegal passing charge under O.C.G.A. § 40-6-46. This alone entitles Blake to qualified immunity. Paez, 915 F.3d at 1285; see also Burnett v. Unified Gov't of Athens-Clarke Cnty., 395 F. App'x 567, 569 n.1 (11th Cir. 2010) (no need to determine whether officers had probable cause to arrest plaintiff for DUI when they had probable cause to support arrest for another traffic violation).

However, the facts here also support a finding that Blake had at least arguable probable cause to arrest Plaintiff for the DUI charge. As noted above, there is no reason to doubt Blake's account that Plaintiff was driving erratically in violation of multiple traffic laws. (Doc. 13, p. 17.) Blake also observed that Plaintiff's eyes were "very watery and bloodshot." (Id.) Blake initiated numerous field sobriety tests, determining that each test indicated intoxication. (Id. at pp. 18–21.) Blake also reports smelling marijuana at the scene. (Id. at p. 18.) The alleged marijuana odor is heavily disputed by Plaintiff and the facts indicate that the odor did not emanate from either Plaintiff's vehicle or her person. (See doc. 13, pp. 17–18; doc. 6 at 23:30–23:36.) However, even disregarding the marijuana odor, the totality of the remaining facts—Plaintiff's erratic and dangerous driving, bloodshot eyes, and failure of multiple field sobriety tests—support a finding that Blake had at least arguable probable cause. None of these factors, standing alone, would be enough to establish probable cause. See Streeter, 689 F. Supp. 3d at 1327 (collecting cases). When taken together, though, they could lead a reasonable officer to conclude that Plaintiff was unsafe to drive because of some form of intoxication—either due to her prescription medication or some other illicit substance. See Hughes v. State, 770 S.E.2d 636, 642 (Ga. 2015) (probable cause to arrest defendant for DUI existed where defendant had driven erratically, was unsteady on his feet,

possessed pills on his person, and had "glassy and red eyes," even though none of these facts alone would support probable cause).

Of course, whether probable cause or arguable probable cause existed requires a consideration of the totality of the circumstances, including any exculpatory information which has been offered to the arresting officer or which would be easily discoverable. Streeter, 689 F. Supp. 3d at 1326. Here, Plaintiff repeatedly noted her various disabilities and provided Blake with a list of her medication. (See generally doc. 6.) In response to Blake's comments about her bloodshot eyes, Plaintiff noted that her eyes will "always" be bloodshot and cloudy due to her various medical conditions. (Id. at 17:40–17:48.) Nevertheless, it is well established that the possibility of innocent explanations for an arrestee's behavior will not automatically negate probable cause. Hughes, 770 S.E.2d at 642; see also Davis v. City of Apopka, 78 F.4th 1326, 1336 (11th Cir. 2023) (officers making a probable cause determination "simply are not required to rule out a suspect's innocent explanation for suspicious facts") (internal quotation omitted). Blake was not required to accept Plaintiff's explanations or resolve conflicting evidence in her favor. Davis, 78 F.4th at 1336 (internal citations and quotations omitted). Blake therefore could reasonably conclude that arresting Plaintiff was lawful, which is all that is required for arguable probable cause. Majeroni, 765 F. Supp. 3d at 1369.

Plaintiff further argues that, even if Blake had probable cause for all three offenses charged, she still has a viable Section 1983 claim as she has alleged that Blake "lied about smelling marijuana as a pretext to extend the traffic stop" and "intentionally falsified a police report and fabricated evidence against Plaintiff" by "repeatedly" documenting in the Incident Report that he smelled marijuana. (Doc. 19, pp. 5–6.) Plaintiff's account is in some tension with the Incident Report, wherein Blake expressly notes that he was "uncertain" as to the source of the alleged

marijuana odor before confirming that "the odor was NOT coming from inside of [Plaintiff's] vehicle." (Doc. 13, pp. 17–18.) Blake also confirmed in the Incident Report that the vapes in Plaintiff's car were not THC vapes. (Id. at p. 18.) Blake's decision to arrest Plaintiff does not appear to have been predicated on the marijuana odor, but on other factors such as Plaintiff's bloodshot eyes, erratic driving, anxious behavior, and failed sobriety tests. (See id. at pp. 17–21.) Further, accepting Plaintiff's bald assertion that Blake lied about the marijuana odor does not change the analysis here as other factors sufficiently support the conclusion that Blake had arguable probable cause. See Jones v. Brown, 649 F. App'x 889, 891 (11th Cir. 2016) (officer's alleged falsification of evidence did not negate probable cause where probable cause did not rest on the allegedly falsified fact). As such, Defendants' Motion to Dismiss is **GRANTED** as to Plaintiff's Fourth Amendment claims against Blake.

### B. First Amendment Retaliation and the Nieves Exception

In her Response, Plaintiff avers that even if Blake had probable cause to arrest her, her First Amendment claim should survive. (Doc. 19, p. 9.) As noted above, the existence of probable cause or arguable probable cause will generally defeat a First Amendment retaliation claim predicated on an arrest. Majeroni, 765 F. Supp. 3d at 1374; Johnson v. DeKalb Cnty., 391 F. Supp. 3d 1224, 1247 (N.D. Ga. 2019) ("Officials are entitled to qualified immunity from First Amendment retaliation claims if they have arguable probable cause to make an arrest."). However, the United States Supreme Court has acknowledged that a narrow exception to this rule exists "where officers have probable cause to make arrests, but typically exercise their discretion not to do so." Nieves, 587 U.S. at 406. This exception is salient where the arrestee is arrested on a misdemeanor charge—a relative rarity when Section 1983 was adopted but which officers today have wide latitude to do. Id. at 407. The Court gives the example of "an individual who has been

vocally complaining about police conduct" being arrested for jaywalking and notes that it "would seem insufficiently protective of First Amendment rights to dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable cause for the arrest." Id. As such, the Court concluded that "the no-probable-cause requirement should not apply [to a plaintiff] when [the] plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." Id. While plaintiffs need not provide "virtually identical and identifiable comparators" to fit within the exception, they must nevertheless provide some form of objective evidence that they were singled out for their speech to avoid the "significant problems" which would arise from reviewing police conduct under a subjective standard. Gonzalez v. Trevino, 602 U.S. 653, 658 (2024).

Plaintiff invokes this exception here, alleging that Bryan County officers "do not typically arrest individuals for allegedly speeding and passing in a no passing zone," and that individuals similarly situated to Plaintiff, "but not engaged in protected First Amendment speech, are not arrested by officers of the Bryan County Sheriff's Office." (Doc. 13, p. 10; doc. 19, p. 10.)[2]

Plaintiff's invocation of the Nieves exception is unavailing. First, Plaintiff fails to support her bald assertion with any specific factual allegations. In reviewing a motion to dismiss, the Court is not obligated to credit a plaintiff's unsupported legal conclusions. Ashcroft, 556 U.S. at 678. Further, Nieves expressly requires the plaintiff to produce "objective evidence," which Plaintiff has not done. 587 U.S. at 407. Plaintiff has identified no comparators and alleges no "objective evidence" supporting an inference that an officer would not typically arrest someone for passing in a no-passing zone while driving more than 25 miles per hour over the speed limit. Nor has Plaintiff alleged any "objective evidence" that Blake's decision to arrest her was motivated by her

[2] Plaintiff does not allege that Bryan County police officers do not typically arrest individuals for DUIs, a charge which the Court finds that Blake had at least arguable probable cause to arrest Plaintiff for.

speech. To plead a claim for First Amendment retaliation, a plaintiff must allege that their protected speech was a but-for cause of the adverse action taken against them. Turner v. Williams, 65 F.4th 564, 579–80 (11th Cir. 2023). At most, Plaintiff here has alleged that Blake was annoyed by Plaintiff's bumper stickers and general demeanor. (See doc. 13, pp. 5–7.) Accepting this as true would not permit the Court to infer that Plaintiff's arrest was caused by Blake's annoyance, particularly where Blake could have reasonably assumed he had probable cause to arrest Plaintiff. Plaintiff thus falls short of meeting the objective standard of Nieves. As such, the exception does not apply and the Court **GRANTS** Defendants' Motion to Dismiss with respect to Plaintiff's First Amendment claims against Blake.

## II. Plaintiff's Claims Against Sheriff Crowe (Count II)

In Count II, Plaintiff brings a Section 1983 claim against Sheriff Crowe in his individual capacity, alleging violations of Plaintiff's First and Fourth Amendment rights. (Doc. 13, pp. 13–14.) Plaintiff alleges that:

> Sheriff Crowe is liable to the Plaintiff because he personally authorized her arrest on August 16, 2024, and/or he was aware of a widespread patten of abuse by Deputy Blake and failed to take appropriate action, and/or his customs or policies of inadequately training officers of the Bryan County Sheriff's Office resulted in deliberate indifference to constitutional rights, and/or he had knowledge that Deputy Blake would act unlawfully and failed to stop him from doing so.
>
> Sheriff Crowe is liable to Plaintiff because of such other actions as will be investigated during the discovery process and ultimately shown by the evidence and proven at trial.

(Id. at p. 14.)

These are textbook conclusory allegations and fail to satisfy the federal pleading standards. Statements that Sheriff Crowe "was aware of a widespread pattern of abuse" and failed to take action or that "his customs or policies of inadequately training officers" resulted in a violation of Plaintiff's constitutional rights constitute mere "[t]hreadbare recitals of the elements of a cause of

action" which the Court need not accept. Ashcroft, 556 U.S. at 678. At no point in her Amended Complaint does Plaintiff allege any facts to support these unadorned legal conclusions. (See generally doc. 13.) Even taking the few non-conclusory factual allegations contained in Plaintiff's Amended Complaint and construing them in her favor, there is nothing that would permit the Court to conclude that Plaintiff has plausibly alleged a claim against Sheriff Crowe.

Plaintiff further alleges that Sheriff Crowe "failed" in his duty to ensure that officers under his supervision were properly trained "by enacting policies, whether written or unwritten, that demonstrate deliberate indifference" to Plaintiff's Constitutional rights. (Doc. 13, p. 11.) Plaintiff alleges no facts in support of this and instead merely asserts that Sheriff Crowe is guilty of "one or more" of one of the following:

a. Not properly training officers on the investigation of DUIs;
b. Training, encouraging, and/or allowing officers to charge individuals with crimes in the absence of probable cause;
c. Training, encouraging, and/or allowing officers to charge individuals with crimes in retaliation for protected First Amendment Speech;
d. Having inadequate policies and procedures in place for investigating and disciplining officers who have violated a suspect's constitutional rights; and
e. Such other policies and procedures as will be investigated during the discovery process, and ultimately shown by the evidence and proven at trial.

(Id.) These are yet more unvarnished legal conclusions which Plaintiff has failed to support and which the Court is not required to accept in evaluating whether Count II states a plausible claim for relief. Ashcroft, 556 U.S. at 678.

Plaintiff's allegation that Sheriff Crowe "personally authorized" her arrest is also without any factual support. Plaintiff does not allege that Sheriff Crowe was physically present at the scene of the arrest or even aware that Plaintiff was arrested. As Defendants note, it is unclear "how the sheriff of a county would be personally involved in a routine roadside traffic stop in real time," and Plaintiff provides no factual allegations to elevate this allegation from merely possible to

plausible. (Doc. 20, p. 7.) Moreover, nothing in the Incident Report suggests that Sheriff Crowe was involved in Plaintiff's arrest. (See doc. 13, pp. 16–21.)

As Plaintiff has offered nothing beyond unsupported legal conclusions, the Court finds that the Amended Complaint fails to state a claim against Sheriff Crowe. As such, Defendants' Motion to Dismiss is **GRANTED** with respect to Count II.

**CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss, (doc. 14), is **GRANTED**. The Court **DIRECTS** the Clerk of Court to enter judgment in Defendant's favor and **CLOSE** this case.

**SO ORDERED** this 30th day of September, 2026.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA